[No. B009454. Second Dist., Div. Two. Jan. 31, 1986.]

MICHAEL SMITH et al., Plaintiffs and Appellants, v. COMMONWEALTH LAND TITLE INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Perona, Langer, LaTorraca & Beck, Major Alan Langer and Raphael Metzger for Plaintiffs and Appellants.

Rubin, Eagan & Feder and Stephen J. Tully for Defendants and Respondents.

**OPINION**

**ROTH, P. J.**—Michael Smith and Gordon Phillips (hereafter Smith) appeal from a judgment of dismissal after the trial court sustained without leave to amend Commonwealth Land Title Insurance Company's demurrer to Smith's third amended complaint.

█ When reviewing a successful demurrer, we accept as true all well-pleaded allegations, however odd or resistant to proof. (*Argonaut Insurance Co.* v. *Superior Court* (1985) 164 Cal.App.3d 320, 323 [210 Cal.Rptr. 417].) We must see whether the alleged facts provide a legitimate basis for relief. The complaint's relevant allegations are these:

"FIRST CAUSE OF ACTION

"(Negligence, Against All Defendants)

". . . . . . . . . . . . . . . . . . . . .

"8. On or about December, 1980, plaintiff Smith created a trust known as Smith Investments which trust was to be the third party in a delayed real estate exchange commonly known as a 'Starker Exchange.' The 'Starker Exchange' is created in order to have a delayed tax-free exchange of real property. On his part, Smith conveyed a parcel of real property in Stockton, California, to F & D Properties, and in return, F &D Properties gave 32 notes and deeds of trust on 32 condominium units owned by F & D Properties. The proceeds from the 32 notes were to be used by Smith Investments to purchase other real property which would then be conveyed to Smith, thereby concluding a tax-free exchange of real property.

"9. On or about December 19, 1980, plaintiff Phillips was named as beneficiary in 32 deeds of trust in his capacity as trustee for Smith Investments which was created for the sole benefit of Smith. The deeds of trust were for 32 condominium units commonly known as 4501 Cedros, Sherman Oaks, California, consisting of units nos. 104, 105, 108, 109, 122, 129, 130, 137, 138, 204, 205, 207, 209, 215, 216, 218, 219, 225, 241, 242, 243, 304, 305, 307, 309, 315, 316, 319, 325, 341, 342 and 343 (hereinafter collectively 'the property').

"10. On or about March 4, 1981, State Savings and Loan Association placed loans upon the same property secured by deeds of trust and Commonwealth, through its agent Nease, issued 32 title insurance policies to State insuring that State's loans were prior to and senior to Smith's deeds of trust without any legal basis for such determination of priority and seniority and Commonwealth, through its agent Nease, acting as an escrow, caused the State loans to be recorded.

"11. Subsequent to the recording of the State loans, F & D Properties defaulted on the 32 notes and Phillips, as trustee for Smith Investments and beneficiary under the deeds of trust, commenced foreclosure proceedings under the deeds of trust. As a result of these proceedings, State asserted its senior position which created a conflict between plaintiffs and State causing complaint number C368059 to be filed by Smith against State Savings and Loan and complaint number C418649 to be filed by State Savings and Loan against Smith and Phillips in the Superior Court of the County of Los Angeles, State of California, to determine priority of their respective deeds of trust. Preliminary injunctions were issued restraining Smith and State from foreclosing on their respective deeds of trust until there was a trial on the merits. After the trial in April, 1983, the trial court held that Smith's deeds of trust were senior to State's deeds of trust.

"12. The policy of title insurance issued by defendant Commonwealth insured and guaranteed the priority of the trust deeds of State Savings and Loan. Plaintiffs are informed and believe and thereon allege that without said title insurance issued by defendant Commonwealth, and the conduct of Commonwealth and the agents of Commonwealth and specifically Larry Nease, State Savings and Loan would not have placed loans upon the property and the entire underlying lawsuits would not have taken place. A preliminary injunction was obtained by State Savings and Loan. Plaintiffs are informed and believe and thereon allege that defendants, and each of them, knew or should have known that State Savings and Loan would not have made the loans in question but for the issuance of said policy of title insurance.

"13. At all times herein mentioned, defendant Commonwealth owed a duty of due care to plaintiffs to search the public title records and disseminate all information from those public records ordinarily examined when a reasonably diligent search is made. Said duty arises because plaintiffs were the true and lawful holders of superior trust deeds at all times mentioned herein, and said trust deeds were duly recorded at a time prior to the recordation of State's deeds of trust and contains [sic] no subordination agreements attached thereto.

"14. Plaintiff if [*sic*] informed and believes that defendants and each of them had knowledge that no such subordination agreements were on file yet negligently and carelessly caused said policies of title insurance to issue to State Savings and Loan insuring the priority of State's deeds of trust. Had a reasonable and diligent search of the records been made, said search would have revealed the priority of Smith's trust deeds and State Savings and Loan would not have taken deeds of trust on the property to secure its loans. Said negligence and carelessness of defendant Commonwealth caused litigation to ensue between plaintiffs herein, State Savings and Loan, F & D Properties and other defendants. As an aspect of the above-mentioned litigation, preliminary injunctions were issued preventing plaintiff from transfer-selling or conveying or otherwise encumbering the property and required plaintiffs to incur attorney's fees and costs of suit.

"15. Because the bulk of plaintiffs' assets were invested in the trust deeds, the litigation and injunction deprived plaintiffs of the use of his money and assets, because of the cloud on the title to the property, suffered tax consequences and incurred attorney's fees, all in a sum in excess of the minimum jurisdiction of this court. Plaintiffs will seek leave of court to amend this complaint when the amounts are ascertained.

"SECOND CAUSE OF ACTION

"(Tort of Another—Against All Defendants)

"16. Plaintiffs refer to paragraphs 1 through 15 of the first cause of action and reallege and incorporate them herein as though set forth in full.

"17. Because of the tortious conduct of defendants, and each of them, as heretofore alleged, plaintiffs were required to prosecute and defend litigation against third parties in order to protect plaintiffs' interests, and plaintiffs have proximately suffered loss of time, attorney's fees and other expenditures in a sum in excess of the jurisdictional minimum of this court. Plaintiffs will seek leave to amend this complaint when said sums are ascertained."

Smith suggests that the facts alleged in his complaint reveal a cause of action for slander of title. Commonwealth objects, citing the rule that new theories may not be raised for the first time on appeal. (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 780 [97 Cal.Rptr. 657, 489 P.2d 537].) However, Commonwealth states the rule too broadly. ■ New theories may not be presented to the appellate court *after trial*. This is grounded on principles of waiver and estoppel, and is a matter of judicial economy and fairness to opposing parties. (9 Witkin, Cal. Procedure (3d ed. 1985) Ap-

peal, § 316, pp. 327-329; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 366, pp. 419-420.) But in the pleading stage these considerations are inapplicable, and on appeal from a demurrer we search the facts to see if they make out a claim for relief under *any* theory. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817].) *Coruccini* v. *Lambert* (1952) 113 Cal.App.2d 486 [248 P.2d 457], cited by Commonwealth, is incorrect to the degree that it suggests otherwise.

■ "The elements of the tort [of slander of title] . . . have traditionally been held to be publication, falsity, absence of privilege, and disparagement of another's land which is relied upon by a third party and which results in a pecuniary loss." (*Appel* v. *Burman* (1984) 159 Cal.App.3d 1209, 1214 [206 Cal.Rptr. 259].) ■ A privilege, either absolute or qualified, is a defense to a charge of slander of title.[1] The privileges are codified in Civil Code section 47 (*Slaughter* v. *Friedman* (1982) 32 Cal.3d 149, 158 [185 Cal.Rptr. 244, 649 P.2d 886]), which states in part: "A privileged publication or broadcast is one made . . . 3. In a communication, without malice, to a person interested therein, . . . ■ [by a person] who is requested by the person interested to give the information." There is some confusion in the cases as to which side must plead and prove the existence or nonexistence of the privilege. Smith claims that *Stevens* v. *Snow* (1923) 191 Cal. 58 [214 P. 968] holds that the defendant bears the burden of proof, while Commonwealth cites *Hill* v. *Allan* (1968) 259 Cal.App.2d 470 [66 Cal.Rptr. 676] for the proposition that the plaintiff must allege and prove that the communication is not privileged. In this instance the better view appears to be a dialectical synthesis of these opposing views. *Jones* v. *Express Pub. Co.* (1927) 87 Cal.App. 246, 255-256 [262 P. 78] states: "The burden is also upon the defendant to prove any affirmative defense upon which he relies, including . . . that the communication is privileged. But when the pleadings admit . . . such facts, manifestly the defendant is thereby relieved of this burden." "Normally, privilege is an affirmative defense which must be pleaded in the answer [citation]. However, if the complaint discloses existence of a qualified privilege, it must allege malice to state a cause of action [citation]." (*Cameron* v. *Wernick* (1967) 251 Cal.App.2d 890, 894-895 [60 Cal.Rptr. 102], quoting *Morris* v. *National Federation of the Blind* (1961) 192 Cal.App.2d 162, 164-165 [13 Cal.Rptr. 336].) Finally, "Ordinarily privilege must be specially pleaded by the defendant, and the burden of proving it is on him. [Citations.] But where the complaint shows that the communication or publication is one within the classes qualifiedly privileged, it is necessary for the plaintiff to go further and plead and prove that

---

[1]The same privileges apply to defamation and to slander of title (*Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 389-390 [182 Cal.Rptr. 438]) and thus cases dealing with defamation privileges generally may be cited for slander of title questions.

the privilege is not available as a defense in the particular case, e.g., because of malice." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 302, p. 2573.)

■ The privilege of Civil Code section 47 quoted above appears on the face of Smith's complaint. State Savings and Loan was interested in the title report, and requested it from Commonwealth. Malice therefore may not be inferred. (Civ. Code, § 48.) Since Smith does not allege malice, his complaint does not state a cause of action for slander of title.

■ Moreover, a title insurance policy does not constitute a "publication." It is a contract to indemnify against loss caused by defects in the title or encumbrances on the title. It is not a representation that the title is in any particular condition. (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 18 [147 Cal.Rptr. 655].)

■ Turning to Smith's negligence cause of action, we find that it is foreclosed by *Stagen* v. *Stewart-West Coast Title Co.* (1983) 149 Cal.App.3d 114 [196 Cal.Rptr. 732]. That case held that "title companies [are] liable only to persons (1) for whose guidance information was supplied; (2) who justifiably relied on the information; and most importantly, (3) who were intended to be influenced by the communication. Intent to influence is a threshold issue. In its absence there is no liability even though a plaintiff has relied on the misrepresentation to his or her detriment, and even if such reliance were reasonably foreseeable. [Citations.]" (*Id.*, at pp. 121-122, fn. omitted.) At bench, Commonwealth did not supply the title report for Smith's guidance; Smith did not rely on the title report; and Commonwealth did not intend to influence Smith. Thus, Commonwealth cannot be liable to Smith.

Smith urges us to disregard *Stagen* on the ground that it is inconsistent with *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60]. The contention is unpersuasive. *J'Aire Corp.* did not concern a title report, but merely held that a plaintiff may recover for economic loss due to defendant's negligence, even in the absence of physical injury. In doing so it relied on *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358]. However, the *Stagen* court distinguished *Biakanja* and its progeny:

"*Stagen* also relies on a line of cases commencing with *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], to establish liability of professionals to third persons who are not in privity of contract. *Biakanja* involved a negligence action by the intended beneficiary of an improperly attested will prepared by a notary public. Framing the issue as

'whether defendant was under a duty to exercise due care to protect plaintiff from injury and was liable for damage caused plaintiff by his negligence even though they were not in privity of contract.' (*id.*, at p. 648), the *Biakanja* court sets forth the criteria for liability under such circumstances. 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' (*Id.*, at p. 650.) [¶] In finding for the intended beneficiary, the court concluded that 'the "end and aim" of the transaction was to provide for the passing of [decedent's] estate to plaintiff.' [Citations.] [¶] Stagen has no ground for recovery under *Biakanja* and its progeny. The 'end and aim' of the transaction here, the title search and issuance of title insurance, was not intended to affect Stagen but to protect the buyers." (*Stagen* v. *Stewart-West Coast Title Co., supra,* 149 Cal.App.3d at pp. 123-124, fn. omitted.)

Smith's second cause of action for tort of another is also based on Commonwealth's negligence. Thus, it too cannot stand.

Finally, we note that on December 19, 1985 Division Five of this court filed its opinion in the related case of *Smith* v. *State Savings and Loan Assn.* (1985) 175 Cal.App.3d 1092 [223 Cal.Rptr. 298]. That case held that State Savings' trust deeds were in fact senior to Smith's under the doctrine of equitable subrogation. Obviously, Smith's claim of negligence has completely vanished as a result. The demurrer in the case at bench was properly sustained.

The judgment is affirmed.

Compton, J., and Gates, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 23, 1986.