[No. A034130. First Dist., Div. Three. May 27, 1987.]

MANUEL LAWRENCE et al., Plaintiffs and Appellants, v. CHICAGO TITLE INSURANCE COMPANY et al., Defendants and Respondents.

Counsel

Brenda Costello for Plaintiffs and Appellants.

Tobin & Tobin, Scott A. Sommer and Craig M. Hughes for Defendants and Respondents.

Opinion

WHITE, P. J.—

I

*Introduction*

Plaintiffs and appellants Manuel and Naila Lawrence, Yousif and Sabria Abdulla, Louie and Patricia Jesus, Amaray Sales Corporation Profit Sharing Trust, John E. Vernor, Ivan M. and Judith Gralnik, James and Orpha A. Trenkle (appellants) obtained from defendant and respondent Chicago Title Insurance Company (Chicago Title), a policy of title insurance (policy) insuring their interest in real property as holders of a second deed of trust securing a loan obligation in the amount of $72,000. When appellants discovered their deed of trust was in third position, they contended Chicago Title was liable not only for the full amount of the loan balance pursuant to the terms of the policy, but in addition, for damages for negligence. The lower court found appellants' contentions had no merit and granted Chicago Title's motion for summary judgment pursuant to Code of Civil Procedure section 437c. We affirm.

## II

### *Factual and Procedural Background*

Appellants Manuel and Naila Lawrence and Yousif and Sabria Abdulla, with others not parties to this action,[1] were the holders of promissory notes dated September 8, 1980, evidencing a loan obligation in the total amount of $72,000, and secured by a deed of trust encumbering real property (property) located in Sausalito. Prior to the funding of the loan, defendant and respondent Pacific Coast Title Company of Marin (Pacific Coast) issued a "Preliminary Report" on the property. The preliminary report erroneously did not reflect a deed of trust encumbering the property in favor of Imperial Savings and Loan Association (Imperial deed of trust) securing the amount of $95,000. When the loan transaction closed, Chicago Title issued to appellants Lawrence and Abdulla its standard form California Land Title Association lender's policy which insured their deed of trust as a second deed of trust in the amount of $72,000, subject only to a deed of trust in favor of Security Financial Services.

In 1982, the borrower defaulted under appellants' deed of trust and the trustee initiated foreclosure proceedings. During the course of the foreclosure, the parties discovered the senior Imperial deed of trust, which placed appellants' deed of trust in third, and not second position. This discovery was a contingency insured against under the policy. Chicago Title advanced $5,094.11 to cure a default under the Imperial deed of trust to avoid further impairment of appellants' security interest.

At the trustee's sale in February 1983, appellants acquired the property by trustee's deed pursuant to a credit bid in the amount of $109,136.84, constituting the original principal of $72,000, accrued interest, late fees and other charges. Following the trustee's sale, appellants resold the property for approximately $225,000. After paying the demands of Imperial Savings and Security Financial Services (the holders of the two senior trust deeds), and various other expenses and taxes, appellants realized approximately $75,331.44 from the resale. Chicago Title then paid to appellants the additional sum of $30,516.39. By virtue of the $75,331.44 net sale proceeds, in addition to the $30,516.39 sum paid directly by Chicago Title to appellants and the earlier $5,094.11 advance, appellants received the full principal balance, interest, and all associated expenses on their $72,000 loan.[2]

---

[1] Pacific National Loan Corporation and William and Carol Varien were the other original lenders. These parties assigned their beneficial interest under the notes and deed of trust to the other named plaintiffs in this action after the loan transaction closed.

[2] Both parties apparently agree that Chicago Title insured not only the $72,000 loan principal, but also all accrued interest, costs, and expenses advanced to protect appellants' security interest. (See 2 Miller & Starr, Current Law of Cal. Real Estate (1977) § 12.63, p. 360.)

Appellants sought much more than repayment of the full loan balance. By their complaint, appellants contended that Chicago Title owed them a duty to search diligently the title records in preparing the preliminary report and issuing the policy based upon the report, and breached that duty, thereby causing appellants damage in an amount in excess of $112,349.80.[3]

Appellants filed a motion for summary judgment on their complaint. Chicago Title, joined by Pacific Coast, brought a cross-motion for summary judgment or summary adjudication of issues. By its motion, Chicago Title asserted the following: (1) as a matter of law, appellants' recovery under the policy was limited to the amount of the loan balance, which they had received in full; and (2) as a matter of law, appellants were not entitled to rely upon the preliminary report or, alternatively, appellants did not in fact rely on the preliminary report.

The lower court granted summary judgment in favor of Chicago Title and Pacific Coast and against appellants. The court found no liability for negligence under the preliminary report because none of the appellants had seen or relied upon it, and no liability of Chicago Title for negligence based upon the policy as a matter of law.

### III

### *Discussion*

A. *Appellants' claim for liability under the policy.*

■ Title insurance is a contract for indemnity under which the insurer is obligated to indemnify the insured against losses sustained in the event that a specific contingency, e.g., the discovery of a lien or encumbrance affecting title, occurs. (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 18 [147 Cal.Rptr. 655]; *Hawkins* v. *Oakland Title Ins. & Guar. Co.* (1958) 165 Cal.App.2d 116, 126 [331 P.2d 742].) ■ The policy of title insurance, however, does not constitute a representation that the contingency insured

---

[3]The nature of the damage allegedly sustained is unclear. The $112,349.80 figure apparently represents the additional sale proceeds which appellants would have realized on the resale of the property if the property had not been encumbered by the Imperial deed of trust. This reduction of net sale proceeds, however, is not the result of respondents' failure to report the Imperial deed of trust. If respondents *had* noted the Imperial deed of trust in the preliminary report and policy, the property of course would have remained encumbered by this lien. In support of their motion for summary judgment, discussed *infra,* appellants filed declarations that they would not have entered into the loan transaction if they had been aware of the Imperial deed of trust. Appellants, however, fail to explain how they suffered damage by entering into the loan transaction because they received what they bargained for—repayment in full of their loan undiminished by the existence of the Imperial deed of trust.

against will not occur. (*Smith* v. *Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 631 [223 Cal.Rptr. 339]; *Walters* v. *Marler, supra,* 83 Cal.App.3d at p. 18.) Accordingly, when such contingency occurs, no action for negligence or negligent misrepresentation will lie against the insurer based upon the policy of title insurance alone. (*Walters* v. *Marler, supra*; *Hawkins* v. *Oakland Title Ins. & Guar. Co., supra,* 165 Cal.App.2d at pp. 126-127.) 2 Miller and Starr, Current Law of California Real Estate, *supra,* summarizes governing law: "[T]he insurer does *not* represent expressly or impliedly that the title is as set forth in the policy; it merely agrees that, and the insured only expects that, the insurer will pay for any losses resulting from, or he will cause the removal of, a cloud on the insured's title within the policy provisions." (*Id.,* at § 12.79, pp. 385-386.) The treatise further notes: "A title policy is *not* a summary of the public records and the insurer is *not* supplying information; to the contrary he is giving a contract of indemnity. A title insurer, as any other insurer, can and does assume the risk of its policy. Every insurer can and does contract to indemnify against specific risks. . . ." (*Id.,* at fn. 6, p. 385.)

▄ Accordingly, when the contingency insured against under the policy occurs, the title insurer is not, by that fact alone, liable to the insured for damages in contract or tort, but rather, is obligated to indemnify the insured under the terms of the policy. When the policy insures the lien of a deed of trust and the insured lien is junior to a lien undisclosed but insured against by the policy, the compensable loss is limited by the terms and conditions of the policy. Miller and Starr, *supra,* state that the compensable loss in this case is limited to the remaining balance of principal, interest and associated expenses, or the amount required to remove the prior lien, whichever is less. (2 Miller & Starr, *supra,* § 12.63, p. 360.) Although we cannot say that such measure of indemnification would be appropriate in all cases under all policies, such measure would be appropriate in most cases. Further, the standard form California Land Title Association policy issued in the instant case provides that "[i]n case loss or damage is claimed under this policy by the owner of the indebtedness secured by the insured mortgage, the Company shall have the . . . option to purchase such indebtedness for the amount owing thereon together with all costs, attorneys' fees and expenses which the Company is obligated hereunder to pay. . . . Upon such offer being made by the Company, all liability and obligations of the Company hereunder to the owner of the indebtedness secured by said insured mortgage, other than the obligation to purchase said indebtedness pursuant to this paragraph, are terminated." This policy provision is binding upon insureds in the "missed lien" situation described herein.

Appellants rely on *Banville* v. *Schmidt* (1974) 37 Cal.App.3d 92 [112 Cal.Rptr. 126], in which the court allowed the assignee of a secured note to

pursue a claim of negligence against the title insurer who had insured title in the name of the trustor of the deed of trust. The court in *Banville* analogized the insurer of title in its case to an abstractor of title. For the reasons set forth in the above-cited authorities, the policy here was not similar to an abstract of title. We therefore do not find *Banville* apposite to the circumstances here.

It is undisputed that Chicago Title paid to appellants the difference between the amount realized by them on the resale of the property and the balance owing on their secured indebtedness. The title company therefore satisfied its obligations to appellants under the terms of the policy. No further claim lies against Chicago Title for negligence based upon the policy.

B. *Appellants' claim of liability under the preliminary report.*

In *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870 [221 Cal.Rptr. 509, 710 P.2d 309], a title insurer furnished prospective buyers with a preliminary title report and a title insurance policy which did not reflect the existence of a recorded water easement on the property. The title insurer admitted liability under the policy for the property's loss in value due to the easement, e.g., loss due to the presence of wells and pipes, but denied any coverage under the policy for loss in value due to loss of groundwater. The court concluded that the policy did provide coverage for loss of groundwater and that the title insurer therefore was liable for such loss under the terms of the title policy.

The court further stated, however, that the title insurer was liable to the buyer for *negligence* for failure to disclose the recorded water easement in the preliminary title report. The court stated: " '[A] title insurer is liable for his negligent failure to list recorded encumbrances in preliminary title report. . . .' " (40 Cal.3d at p. 883.) (It is unclear whether the court found that the title insurer could be liable for damages for negligence in an amount in excess of the amount of coverage under the policy. The court merely affirmed the jury's special verdict fixing the loss at $100 per acre. (*Id.,* at p. 879.)) Because a title insurance policy does not constitute a representation of title, and because a preliminary title report, as opposed to an abstract of title, generally constitutes no more than a statement of the terms and conditions upon which the insurer is willing to issue its title policy (see discussion of Ins. Code, § 12340.11, *infra*), liability for negligence based upon the preliminary title report in addition to liability under the policy does not seem supportable. Nevertheless, we are bound by our Supreme Court's statement that liability for negligence may arise from the preliminary title report. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

Chicago Title argues that a preliminary *title* report is distinct from a preliminary report which was furnished here.  ■  Chicago Title relies upon Insurance Code section 12340.11, effective January 2, 1982, by which the Legislature clarified that a "preliminary report" is *not* an abstract of title and "shall not be construed as, nor constitute, a representation as to the condition of title to real property, but shall constitute a statement of the terms and conditions upon which the issuer is willing to issue its title policy, if such offer is accepted." The defendant title insurer in *White* v. *Western Title Ins. Co., supra,* 40 Cal.3d 870, raised the same argument. Our Supreme Court rejected the argument, stating that Insurance Code section 12340.11 could not be applied retroactively to preliminary title reports furnished prior to the effective date of the statute. (*Id.,* at p. 884.) Here, the preliminary report was issued prior to 1982 and Insurance Code section 12340.11 therefore does not govern.

■  Even if the preliminary report constitutes a representation of title upon which the recipient is entitled to rely, a claim of negligence must be predicated upon the insured's actual reliance on the report. In *Smith* v. *Commonwealth Land Title Ins. Co., supra,* 177 Cal.App.3d 625, plaintiff, a trust deed holder, sued a title insurance company for negligence in issuing policies to a third party insuring the priority of the third party's deeds of trust, where in fact plaintiff's trust deeds were senior in priority. Plaintiff claimed damage by the fact that the third party sued plaintiff when it discovered plaintiff's senior liens and obtained a preliminary injunction depriving plaintiff of the use of his property. The court held that because, among other factors, the plaintiff had not *relied* upon the third party's title report, plaintiff could state no claim for negligence. (*Id.,* at p. 631.) In *Mitchell* v. *California-Pacific T. Ins. Co.* (1926) 79 Cal.App. 45 [248 P. 1035], the court affirmed the sustaining of a demurrer in an action based upon a certificate of title, stating: "The complaint . . . contains no allegation that appellant *relied* on the certificate either in making the purchase or paying the price. It is essential to the statement of a cause of action that the plaintiff *relied and acted upon the abstract or certificate furnished* . . . ." (*Id.,* at p. 53, italics added.)

Here, Chicago Title established, and the lower court found, that appellants had not seen or relied upon the preliminary report prior to making the loan. The record establishes that appellants Lawrence and Abdulla, two of the original lenders, were the only appellants who could have relied on the preliminary report *prior* to the funding of the loan because, as explained *ante,* the other appellants acquired by assignment the secured interests of the other original lenders after the loan had been funded and the policy had been issued. The declarations of these assignee-appellants submitted in support of their motion for summary judgment state that they relied upon an

"investment proposal" of Pacific National Loan Corporation, a loan brokerage company and one of the original lenders not a party to this action, and the title insurance policy. There is no mention of the preliminary report. As to appellants Lawrence and Abdullah, transcripts of their depositions (copies of which were submitted in support of Chicago Title's motion) indicate that these appellants never even saw, much less relied upon the preliminary report prior to making the loan. The declarations of these appellants submitted in support of their motion for summary judgment, construed liberally, do not rebut this indication.

We conclude that the lower court properly found that there was no triable issue of any material fact and that respondents were entitled to judgment as a matter of law. (Code Civ. Proc., § 437c.)

IV

*Disposition*

The judgment entered in favor of Chicago Title and Pacific Coast and against appellants on their complaint is affirmed.

Scott, J., and Merrill, J., concurred.