**CULP CONSTRUCTION COMPANY and Federal Insurance Company, Plaintiffs,**

v.

**BUILDMART MALL, a Utah limited partnership, et al., Defendants.**

**TOWER FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant, Third–Party Plaintiff, and Appellant,**

v.

**LAWYERS TITLE INSURANCE CORPORATION, Defendant, Third–Party Defendant, and Appellee.**

No. 880388.

Supreme Court of Utah.

June 27, 1990.

Rehearing Denied Aug. 10, 1990.

---

John P. Ashton, Brian S. King, Salt Lake City, and John A. Kincaid, Jr., John R. O'Keefe, Pittsburgh, Pa., for defendant, third-party plaintiff, and appellant.

Jeffrey R. Oritt, Robert S. Howell, Salt Lake City, and Mark T. Davenport, Doug T. Butler, Dallas, Tex., for defendant, third-party defendant, and appellee.

HALL, Chief Justice:

Tower Federal Savings and Loan Association appeals from a grant of summary judgment in favor of Lawyers Title Insurance Corporation. The trial court found that no genuine issue of material fact existed with regard to Tower Federal Savings and Loan Association's complaint that Lawyers Title Insurance Corporation owed Tower Federal Savings and Loan a duty to disclose all record title information. We affirm in part and reverse in part.

## FACTS

On appeal from summary judgment, we look at the facts in a light most favorable to the party opposing summary judgment.[1]

In September 1983, Buildmart Mall, a Utah limited partnership, was established to develop and construct, in Salt Lake County, a retail shopping mall and warehouse distribution center specializing in custom building materials. Funding for the project was essentially generated from the sale of industrial development revenue bonds ("IRBs") in the face amount of $7,750,000. First Security Bank of Utah, N.A. ("First Security"), acted as indenture trustee on the IRB loan through its corporate trust department. The deed of trust securing the IRB loan was recorded on September 26, 1984, in the Salt Lake County Recorder's office.

During the summer of 1984, the principal of the project determined that a funding shortfall of approximately $500,000 existed

---

1. *Owens v. Garfield,* 784 P.2d 1187, 1188 (Utah 1989).

for the completion of the project. Tower Federal Savings and Loan Association ("Tower") was approached by a mortgage broker, Richards–Woodbury Mortgage Corporation ("Richards–Woodbury"), with respect to lending Buildmart Mall $750,000, secured by a second position deed of trust to the project, in order to complete construction.

Richards–Woodbury retained Lawyers Title Insurance Corporation ("Lawyers Title") to provide a commitment for title insurance and issue a title insurance policy. Richmond Title Company ("Richmond Title"), the local agent for Lawyers Title, furnished Richards–Woodbury with a commitment for title insurance that revealed certain encumbrances and liens against the title. Richmond Title also acted as local agent for Lawyers Title in writing the subsequent title policy.

On March 18, 1985, Jeffery K. Woodbury, acting as agent for Tower, wrote a letter to Richmond Title delineating escrow instructions for the funds to be loaned by Tower. Richmond Title was instructed, among other things, to deposit the funds into an escrow account and to release the funds to Buildmart Mall only when Richmond Title had taken steps to "insure that the Trust Deed enclosed herewith ... is in a second lien position behind [First Security Bank]" and "[t]he only prior exceptions to the Trust Deed should be those listed in your Commitment for Title Insurance." In addition, the escrow instructions directed Richmond that if it was "unable or unwilling to promptly follow all of the above referenced instructions," it was to forego disbursement of the funds.

Prior to the Tower loan's closing but after the commitment for title insurance ("the commitment") had been issued, numerous liens appeared of record that were not reported by Lawyers Title or Richmond Title on the commitment. Richmond nevertheless disbursed the funds, and the Tower loan was secured by a second deed of trust that was recorded on March 20, 1985, in the office of the Salt Lake County Recorder.

Sometime after March 20, 1985, the developer defaulted on its loan with Tower, as well as its obligations under the IRB loan. Culp Construction Company ("Culp"), the developer's primary general contractor, filed a complaint on September 3, 1985, naming Tower as one of the defendants. Tower tendered its defense of the litigation to Lawyers Title under the terms of the title insurance policy. Lawyers Title accepted the tender of defense subject to a reservation of rights.

First Security initiated nonjudicial foreclosure proceedings against the project as trustee under the indenture of trust and, on March 16, 1987, held a trustee's sale at which First Security acquired the project. As a result of the foreclosure proceedings, all liens junior to the first lien held by First Security, including the Tower trust deed, were extinguished by operation of law. Tower and its counsel did not take any action to stop the foreclosure sale or protect its security interest.

A settlement was reached between all parties, resulting in the dismissal of all claims with prejudice, with the exception of the claims between Tower and Lawyers Title. All outstanding mechanics's liens on the project were released as part of the settlement.

On appeal from summary judgment in favor of Lawyers Title, Tower asserts that there are genuine issues of material fact with respect to three causes of action: breach of contract, breach of an implied contractual obligation of good faith and fair dealing, and negligent misrepresentation.

## I. BREACH OF CONTRACT

Tower's first claim is that Lawyers Title breached a contractual duty to accurately report the status of the title at the time the Tower loan was closed. The record reveals that the only contractual privity Tower had with Lawyers Title was the title insurance policy issued to Tower by Lawyers Title through its local agent, Richmond Title.

The essence of Tower's .claim is that as part of the title insurance process, Lawyers Title issued a commitment for title insurance to Richards–Woodbury that was not

updated and upon which Tower relied in making the loan. Tower claims that certain mechanic's liens of record were not included as an update to the commitment and that additional liens would have indicated a "red flag" that the project was underfunded, which would have caused Tower to decline advancing any loan funds to Buildmart.

Lawyers Title presents three arguments to support summary judgment on the breach of contract issue. Its first argument is that the only contract it had with Tower was the title insurance policy itself and that it fulfilled all requirements of the policy. Second, Lawyers Title argues that the commitment for title insurance that preceded the title policy was issued to Richards–Woodbury, not to Tower, and therefore no privity existed between Lawyers Title and Tower with regard to the commitment. Third, Lawyers Title argues that a commitment or preliminary title report is not an abstract of title and that it should not be held liable for the abstractor's negligence.

█ It is first to be observed that Lawyers Title fully and adequately defended

Tower's second lien position as it was obligated to do by the terms of the title insurance policy. For that reason, Tower's cause of action for breach of an implied duty of good faith and fair dealing or the duty to bargain in good faith is unsupported by the facts. Hence, we affirm the conclusion of the trial court that no genuine issue of material fact exists with respect to breach of the contractual duty of good faith and fair dealing.[2]

█ As to whether a title insurance company is an abstractor of title, some jurisdictions hold title insurance companies to the standard of liability generally associated with abstractors.[3] However, we believe that the better-reasoned approach is to consider preliminary title reports and commitments for title insurance as "no more than a statement of the terms and conditions upon which the insurer is willing to issue its title policy...."[4] Indeed, "[t]he prevailing view remains not to impose liability in tort on a title company."[5]

Utah Code Ann. § 31A-1-301(82) (1986 & Supp.1989) defines title insurance as

**2.** *See Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 798 (Utah 1985).

**3.** *See, e.g., Moore v. Title Ins. Co. of Minnesota,* 148 Ariz. 408, 411–12, 714 P.2d 1303, 1306–07 (Ct.App.1985) (title company can be held liable in tort for its negligence when it holds itself out as a searcher of titles and provides the information for the applicants to act upon); *McLaughlin v. Attorneys' Title Guaranty Fund, Inc.,* 61 Ill. App.3d 911, 18 Ill.Dec. 891, 895, 378 N.E.2d 355, 359 (1978) (when a person seeks title insurance, he expects to obtain a professional title search legal opinion as to the condition of title and a guarantee); *Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 553 P.2d 254, 264–66 (1976) (where title insurance company held out to the public and assumed to discharge the same duties as an individual conveyancer or attorney); *Dorr v. Mass. Title Ins. Co.,* 238 Mass. 490, 131 N.E. 191 (1921) (title insurance company held to have acted not merely as a title insurer but also as a paid agent in examining the title); *Heyd v. Chicago Title Ins. Co.,* 218 Neb. 296, 354 N.W.2d 154, 158–59 (1984) (when rendering a title report and issuing a policy, a title insurance company assumes the two distinct duties of abstractor and title insurer); *Sunset Holding Corp. v. Home Title Ins. Co.,* 172 Misc. 759, 16 N.Y. S.2d 273 (1939) (purchaser of realty was entitled to recover against title insurance company for

negligent examination of title where title report was inaccurate on dimensions of property).

**4.** *See, e.g., Lawrence v. Chicago Title Ins. Co.,* 192 Cal.App.3d 70, 237 Cal.Rptr. 264, 267 (Cal. App.1987) (the California Supreme Court upheld *White v. Western Title Ins. Co.,* 40 Cal.3d 870, 221 Cal.Rptr. 509, 710 P.2d 309 (1986), which applied abstractor liability to title insurance companies, but court noted that cause of action arose in the *Lawrence* case after California legislature had passed a law eliminating abstractor liability for title insurance companies); *see also Brown's Tie & Lumber v. Chicago Title Co. of Idaho,* 115 Idaho 56, 59–60, 764 P.2d 423, 426–27 (1988) (upholding *Anderson* and stating that to fall outside of the *Anderson* rule it must be shown that abstractor duties were voluntarily assumed); *Anderson v. Title Ins. Co.,* 103 Idaho 875, 879, 655 P.2d 82, 86 (1982) (refused to impose the liabilities of an abstractor upon a title insurance company merely because it issued a preliminary title report); *Horn v. Lawyers Title Ins. Co.,* 89 N.M. 709, 711, 557 P.2d 206, 208 (1976) (no duty of title insurance company to search records unless express or implied in the policy).

**5.** *Walker Rogge, Inc. v. Chelsea Title & Guaranty Co.,* 116 N.J. 517, 562 A.2d 208, 219 (1989).

the insuring, guaranteeing, or indemnifying of owners of real or personal property or the holders of liens or encumbrances on that property, or others interested in the property against loss or damage suffered by reason of liens or encumbrances upon, defects in, or the unmarketability of the title to the property, or invalidity or unenforceability of any liens or encumbrances on the property.

It is also to be observed that a duty is imposed by statute upon title insurers to make a reasonable search and examination of title for the purpose of determining insurability. Utah Code Ann. § 31A–20–110(1) (1986) states in part: "No title insurance policy may be written until the title insurer or its agent has conducted a reasonable search and examination of the title and has made a determination of insurability of title under sound underwriting principles." Nevertheless, even though section 31A–20–110(1) imposes a duty of a reasonable search and examination for the purpose of determining the insurability of title, it does not impose a duty to abstract titles upon title insurance companies.

"Abstractor" is not defined in the Utah Code; however, "abstract of title" has been defined as

[a] condensed history of the title to land, consisting of a synopsis or summary of the material or operative portion of all the conveyances, of whatever kind or nature, which in any manner affect said land, or any estate or interest therein, together with a statement of all liens, charges, or liabilities to which the same may be subject, and of which is in any way material for purchasers to be apprised. An epitome of the record evidence of title, including maps, plats, and other aids.[6]

The function, form, and character of a title insurer is different from that of an abstractor. One who hires a title insurance company does so for the purpose of obtaining the assurance or guarantee of obtaining a certain position in the chain of title rather than for the purpose of discovering the title status. A title insurance company's function is generally confined to the practice of insurance, not to the practice of abstracting. Hence, Lawyers Title did not owe a duty to abstract the title by virtue of its status as a title insurance company.

## II. NEGLIGENT MISREPRESENTATION

The next claim asserted by Tower is that Lawyers Title, through its agent Richmond Title, negligently misrepresented the state of the title in the commitment for title insurance. The trial court held that because "negligent misrepresentation" is a tort claim, it could not be asserted separately from the breach of contract claim when the alleged misrepresentation arose out of the contractual relationship of the parties according to our decision in *Beck v. Farmers Insurance Exchange.*[7]

■ In *Beck*, an insured brought an action against an insurer for a bad-faith refusal to settle a claim for insured motorist benefits. The insured alleged breach of contract, breach of implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. With regard to the emotional distress tort claim, we held that "in a first-party relationship between an insurer and its insured, the duties and obligations of the parties are contractual rather than fiduciary. Without more, a breach of those implied or express duties can give rise only to a cause of action in contract, not one in tort."[8] However, our holding in *Beck* does not preclude the bringing of a tort claim independently of a contract claim. In *Beck*, we specifically stated: "We recognize that in some cases the acts constituting a breach of contract may also result in breaches of duty that are independent of the contract and may give rise to causes of action in tort."[9]

---

**6.** *Black's Law Dictionary* 10 (5th ed. 1979).

**7.** 701 P.2d 795 (Utah 1985).

**8.** *Id.* at 800.

**9.** *Id.* at 800, n. 3 (citing *Samms v. Eccles,* 11 Utah 2d 289, 358 P.2d 344 (1961) (intentionally causing severe emotional distress to others); *Wetherbee v. United Ins. Co.,* 265 Cal.App.2d 921, 71 Cal.Rptr. 764 (1968) (breach of a duty to

Statutory requirements that give rise to independent causes of action under various unfair practices acts may also give rise to independent tort actions.[10]

Negligent misrepresentation occurs "[w]here one having a pecuniary interest in a transaction, is in a superior position to know material facts, and carelessly or negligently makes a false representation concerning them, expecting the other party to rely and act thereon, and the other party reasonably does so and suffers loss in that transaction...."[11] Furthermore, "privity of contract is not a necessary prerequisite to liability."[12]

In the instant case, Tower asserts a cause of action for negligent misrepresentation because Lawyers Title provided a commitment for title insurance to Richards–Woodbury, a mortgage broker, with the knowledge that Tower would rely upon the commitment in making the loan. Genuine issues of material fact exist with regard to whether Lawyers Title knew that Tower would rely upon the commitment in making the loan. Indications of reliance on the commitment may arise from the fact that the title insurance policy was issued to both Richards–Woodbury and Tower. In addition, the escrow instructions given to Lawyers Title's agent by Tower's agent reveal that the loan was contingent upon the status of the title remaining the same at the time of closing as it was when the commitment was provided.

Lawyers Title argues that because a commitment is not an abstract of title, Tower could not reasonably rely upon it as a comprehensive statement of the status of the title. We have heretofore concluded that the commitment for title insurance or a preliminary title report in this case was not an abstract of title; however, it appears that Lawyers Title's local agent,

Richmond Title, may have assumed the duties and responsibilities of an abstractor when it received the escrow instructions from Tower's agent which explicitly directed Richmond not to transfer the loan funds unless the title status remained the same as stated on the commitment.

We hold that summary judgment on the issue of negligent misrepresentation was inappropriate because our decision in *Beck* does not preclude a separate independent tort. In addition, material factual issues remain as to whether Lawyers Title owed a contractual duty to Tower to represent the true status of the title upon receipt and acceptance of the escrow instructions and at all times thereafter when Lawyers Title knew, or in the exercise of reasonable diligence should have known, of additional mechanic's liens against the subject property. Should it be determined that Lawyers Title owed Tower a duty of disclosure, other questions of material fact also exist, including whether that duty was breached and whether Tower reasonably relied upon the commitment, thereby defeating a motion for summary judgment.

Remanded for further proceedings consistent with this opinion.

STEWART and ZIMMERMAN, JJ., and JUDITH M. BILLINGS, Court of Appeals Judge, concur.

HOWE, Associate C.J., concurs in the result.

DURHAM, J., having disqualified herself, does not participate herein; BILLINGS, Court of Appeals Judge, sat.

---

bargain in good faith amounting to fraudulent activity)).

10. *See, e.g.,* Utah Code Ann. §§ 13–5–2.5 (Supp. 1989), 76–9–501 to –509 (1978), 76–10–706 to –708 (1978), 76–10–710 (1978).

11. *Jardine v. Brunswick Corp.,* 18 Utah 2d 378, 381, 423 P.2d 659, 662 (1967); *see also Price–*

*Orem Investment Co. v. Rollins, Brown & Gunnell,* 713 P.2d 55, 59 (Utah 1986); Restatement (Second) of Torts § 552 (1965).

12. *Price–Orem,* 713 P.2d at 59; *Christenson v. Commonwealth Land Title Ins. Co.,* 666 P.2d 302, 307 (Utah 1983).