2003 UT App 383

Nile CHAPMAN; Roger Chapman; and Gordon Harmston, Trustee of Eugene Harmston Trust, Plaintiffs and Appellants,

v.

UINTAH COUNTY; Commonwealth Land Title Insurance Company; and Basin Land Title and Abstract, Inc., Defendants and Appellees.

No. 20010816–CA.

Court of Appeals of Utah.

Nov. 14, 2003.

---

James A. Beckwith, Arvada, Colorado, and Daniel S. Sam, Vernal, for Appellants.

Clark B. Allred and Clark A. McClellan, McKeachnie Allred McClellan & Trotter, Vernal, and Richard A. Rappaport and Leslie Van Frank, Cohne Rappaport & Segal, Salt Lake City, for Appellees.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Nile Chapman, Roger Chapman, and Gordon Harmston, as trustee for the Eugene Harmston Trust (collectively, Chapman), ap-

peal a jury verdict, finding that a road adjacent to Chapman's property was a Uintah County public road. Chapman also appeals a grant of summary judgment to Commonwealth Land Title Insurance Company and Basin Land Title & Abstract, Inc. (collectively, Commonwealth). We affirm.

## BACKGROUND

¶ 2 In 1997, Chapman anticipated purchasing property located in Uintah County adjacent to a road commonly referred to as the "Wyasket Bottom Road." Chapman obtained a title insurance policy from Commonwealth which led Chapman to believe the road next to the property was a private road attached to the property.[1] Before Chapman purchased the property, the road had been used frequently by members of the public. Specifically, oil company employees testified that they used the road on average four or five times per month when returning to Vernal, Utah, from surrounding oil fields. These oil company employees also testified that they used the road when accessing surrounding government land and often saw government workers doing the same. Other members of the public testified that they used the road year-round, without permission and without encountering any gates or other restrictions, to hunt, trap, fish, sightsee, and bird-watch.

¶ 3 Chapman ultimately purchased the property in August and erected a gate across the Wyasket Bottom Road. Uintah County informed Chapman that the road was public and ordered Chapman to remove the gate. Chapman filed a declaratory judgment against the County seeking to clarify whether the road was private or public. Chapman joined Commonwealth in the suit, claiming Commonwealth had breached its contractual duty to Chapman by not defending Chapman's title against Uintah County, had negligently misrepresented to Chapman that the Wyasket Bottom Road was not a county road, and had performed its title search negligently.

¶ 4 Commonwealth filed a motion for partial summary judgment, which was granted.

The remaining matters proceeded to trial and the jury returned a verdict in favor of Uintah County. Chapman appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Chapman argues that the trial court erred in granting Commonwealth's motion for summary judgment. "We review the district court's summary judgment ruling for correctness, granting no deference to its legal conclusions." *Woodbury Amsource, Inc. v. Salt Lake County*, 2003 UT 28, ¶ 4, 73 P.3d 362.

¶ 6 Chapman next argues that the trial court erred by not giving plaintiff's instructions 5, 6, 7, and 9 and in giving instruction 33, which Chapman claims inaccurately states the law. " 'Whether the trial court's refusal to give a proposed jury instruction constitutes error is a question of law, which we review for correctness.' " *State v. Bluff*, 2002 UT 66, ¶ 21, 52 P.3d 1210 (citations omitted). Likewise, "[w]hether a jury instruction correctly states the law presents a question of law which we [also] review for correctness." *State v. Houskeeper*, 2002 UT 118, ¶ 11, 62 P.3d 444.

¶ 7 Chapman next claims that the trial court erred in excluding certain exhibits as irrelevant. "The trial court has broad discretion in determining the relevancy of offered evidence, and error will be found only if the trial court abused its discretion." *Larsen v. Johnson*, 958 P.2d 953, 956 (Utah App.1998).

¶ 8 Chapman, lastly argues that the jury verdict is not supported by clear and convincing evidence.

" 'We view the evidence in the light most supportive of the verdict, and assume that the jury believed those aspects of the evidence which sustain its findings and judgment. . . . [W]e will upset a jury verdict only upon a showing that the evidence so clearly preponderates in favor of the . . . appellant that reasonable people would not differ on the outcome of the case.' "

---

1. The policy stated that "[t]his policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) which arise [because the] . . . Property is not located on a county road[. Furthermore,] Company DOES NOT INSURE ACCESS."

*Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48,¶ 29, 48 P.3d 968 (alteration in original) (citations omitted).[2]

## ANALYSIS

### I. Commonwealth's Motion for Summary Judgment

#### A. Breach of Title Insurance Contract

¶ 9 Chapman claims that the trial court erred in dismissing his claim against Commonwealth for breach of contract. Below, Chapman argued that Commonwealth breached its contractual duty by not defending Chapman's title against Uintah County. In contrast, Chapman, for the first time on appeal, argues that Commonwealth breached the contract because it did not pay Chapman damages for the diminution in value to Chapman's title.[3]

¶ 10 Chapman's claim is without merit. First, the issue of whether Chapman may recover damages under the title insurance policy for any diminution in value to its property is not before us because Chapman did not raise this issue below and does not argue plain error or exceptional circumstances on appeal. *See State v. Hodges*, 2002 UT 117,-¶ 5, 63 P.3d 66 (noting, " '[t]he general rule is that [absent a claim of plain error or exceptional circumstances] issues not raised [in the district court] cannot be argued for the first time on appeal ...' ") (quoting *State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994)).

¶ 11 Second, when the trial court granted Commonwealth's motion for summary judgment it preserved Chapman's right, in a latter action, to seek damages against Commonwealth under the title insurance policy. Commonwealth also conceded this point during oral argument before this court. Thus, we do not reach the issue of whether Chapman may recover under the title insurance policy for any diminution in value to its property.[4]

#### B. Negligence

¶ 12 Chapman next argues that Commonwealth is liable for professional negligence for not discovering that the road was a county road. Chapman claims that Utah Code Annotated section 31A–20–110(1) sets forth a "specific standard for title searches, the breach of which would be negligence per se." Utah Code Ann. § 31A–20–110(1) (1999). Section 31A–20–110(1) provides: "No title insurance policy may be written until the title insurer or its agent has conducted a reasonable search and examination of the title and has made a determination of the insurability of title under sound underwriting principles." *Id.*

¶ 13 In the alternative, Chapman argues that *Christenson v. Commonwealth Land Title Insurance Co.*, 666 P.2d 302 (Utah 1983), establishes a duty requiring title insurance companies "to use reasonable care to not mislead one whom [the company] knew would justifiably rely upon the facts as represented." *Id.* at 306. In summary, Chapman asserts that Commonwealth is liable, not only in contract for defects in the title insurance policy, but also in tort for negligence. We disagree.

¶ 14 In *Culp Construction Co. v. Buildmart Mall*, 795 P.2d 650 (Utah 1990), the Utah Supreme Court addressed the issue of whether a title insurance company was liable for errors in tort, in addition to its liability under the insurance policy. *See id.* at 653.

¶ 15 In *Culp*, a mortgage company agreed to lend a builder funds to complete a project in exchange for a second position deed of

---

2. Chapman also argues that the "easement must be limited to its historical use, and the trial court erred in refusing to do so." Chapman did not raise this issue below and does not argue plain error or exceptional circumstances on appeal. Thus, we do not address this argument. *See State v. Hodges*, 2002 UT 117,¶ 5, 63 P.3d 66.

3. Specifically, Chapman argues that the amount of these damages is undetermined, thus a material fact is in dispute.

4. Chapman also raises for the first time on appeal the contention that the trial court dismissed his claims against Commonwealth on the mistaken belief that the parties had agreed to arbitration. " 'The general rule is that issues not raised [in the district court] cannot be argued for the first time on appeal....' " *Hodges*, 2002 UT 117 at ¶ 5, 63 P.3d 66 (quoting *State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994)). For this reason, we do not address this issue.

trust. *See id.* The mortgage company obtained title insurance and sent the title insurance company a letter containing escrow instructions, which restricted distribution of funds from escrow until the title insurance company verified that the mortgage company was given a second position deed of trust and that the "only prior exception to the Trust Deed [was] those listed in [the] Commitment for Title Insurance." *Id.* at 652. After the funds were distributed, the builder defaulted and the mortgage company learned of the existence of several liens that had not been reported in the title insurance commitment. *See id.* The mortgage company's lien was extinguished in a subsequent foreclosure action and the mortgage company sued the title insurance company. *See id.* The trial court granted the title insurance company summary judgment and the mortgage company appealed, arguing that material issues of fact existed as to whether the title insurance company negligently misrepresented the state of the title. *See id.*

¶ 16 When considering whether the title insurance company was liable in tort, as well as under the insurance policy, the supreme court stated that " '[t]he prevailing view remains not to impose liability in tort on a title company.' " *Id.* at 653 (alteration in original) (citations and footnotes omitted). The court stated that "even though section 31A–20–110(1) imposes a duty [to conduct] reasonable search and examination for the purpose of determining the insurability of title, it does not impose a duty to abstract titles upon title insurance companies."⁵ *Id.* at 654.

> The function, form, and character of a title insurer is different from that of an abstractor. One who hires a title insurance company does so for the purpose of obtaining the assurance or guarantee of obtaining a certain position in the chain of title rather than for the purpose of discovering the title status. A title insurance company's function is generally confined to the practice of insurance, not to the practice of abstracting.

*Id.* Accordingly, Chapman's claim that Commonwealth is liable in tort, similar to an abstractor, for its error in representing the title in the insurance commitment and policy is not supported by our case law.⁶

¶ 17 However, Chapman next argues that Commonwealth "voluntarily assume[d] the role of abstractor" in this case by "mak[ing] legal conclusions about the public records." In *Culp*, the court concluded that, despite the general prohibition against title insurance company's tort liability, the title insurance company could be liable for a tort independent of the title insurance policy. *See id.* There, the second lienholder placed conditions on the title insurance company distributing the escrow funds. *See id.* at 655. The court concluded that the title insurance company "may have assumed the duties and responsibilities of an abstractor when it received the escrow instructions from [the second lien holder] which explicitly directed [the title company] not to transfer the loan funds unless the title status remained the same as stated on the commitment." *Id.* Accordingly, in that case, summary judgment on this tort was improper.

¶ 18 Chapman, however, asserts that when Commonwealth stated in the policy that the road was not a county road that Commonwealth had made a legal determination and thereby assumed the role of an abstractor. We disagree. Unlike in *Culp*, where the title insurance company assumed a role separate

---

5.    " 'Abstractor' is not defined in the Utah Code; however, 'abstract of title' has been defined as [a] condensed history of the title to land, consisting of a synopsis or summary of the material or operative portion of all the conveyances, of whatever kind or nature, which in any manner affect said land, or any estate or interest therein, together with a statement of all liens, charges, or liabilities to which the same may be subject, and of which is in any way material for purchasers to be apprised. An epitome of the record evidence of title, including maps, plats, and other aids."

6.    Furthermore, the policy itself specifically limits Commonwealth's liability. The policy provides: "Any claim of loss or damages, whether or not based on negligence and which arises out of the status of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy."

*Culp Constr. Co. v. Buildmart Mall,* 795 P.2d 650, 654 (Utah 1990) (quoting Black's Law Dictionary 10 (5th ed.1979)).

and apart from the issuance of the title insurance commitment and policy, *see id.*, Commonwealth has not assumed any additional role and did not act as an abstractor. Thus, Commonwealth is held to the standard of care of an ordinary title insurance company and is liable only under the principles of contact. Chapman's attempt to recover under tort is without merit.

## II. Jury Instructions

### A. Instructions Number 5, 6, and 7

■ ¶ 19 Chapman argues that the trial court erred in not submitting to the jury proposed instructions 5, 6, and 7. In these instructions, Chapman wanted to instruct the jury that a landowner could only abandon his land if he consented to the road becoming a public thoroughfare. The court provided the parties an opportunity to argue this issue. After hearing arguments from both sides the court concluded that

> "it's clear that there's only three elements [to abandonment].... [T]he Supreme Court [has] clearly indicate[d] that it is not necessary to show consent of the owner [to prove abandonment]."  .... The road is a public road if the evidence establishes by clear and convincing evidence each of the following: One, continuous use by the public; two, as a public thoroughfare; three, for a period of ten [continuous] years.

■ ¶ 20 We agree. In *Heber City Corp. v. Simpson,* 942 P.2d 307 (Utah 1997), the City sought to condemn property near a local airport. *See id.* at 308. The landowners, disappointed with the compensation offer, argued that the City had not considered the loss of access to their property resulting from the taking of a private road. *See id.* The City responded that the road was a public road and could be closed at the City's discretion. *See id.* at 309. The court set forth the following standard to determine whether a road was public: "for a road to become a public highway by dedication ... there must be (i) continuous use, (ii) as a public thoroughfare, (iii) for a period of ten

years." *Id.* at 310. The court did not indicate that landowner consent was necessary to prove abandonment or dedication of a road.[7] Thus, an "owner['s] intent is ... irrelevant to determining whether a road has been dedicated or abandoned to public use," *Campbell v. Box Elder County,* 962 P.2d 806, 807 n. 3 (Utah Ct.App.1998), and the trial court did not exceed its permitted range of discretion in refusing to give the tendered jury instructions.

### B. Instruction Number 9

■ ¶ 21 The jury was instructed that Uintah County had to prove by clear and convincing evidence that the road had been used continuously by the public as a public thoroughfare for a period of ten years. Chapman also asked the trial court to instruct the jury that " 'seasonal use' [such as use only in hunting season] ... was not sufficient to establish" continuous use. In contrast, the County introduced evidence that the road was used year round and argued that "continuous use" did not require that the public use the road constantly.

¶ 22 In *Campbell v. Box Elder County,* 962 P.2d 806 (Utah Ct.App.1998), this court made clear that there can be "continuous and uninterrupted use of a road over ten years where 'the public, even though not consisting of a great many persons, made a continuous and uninterrupted use ... as often as they found it convenient or necessary.' " *Id.* at 809 (citations omitted). Furthermore, the court stated that " 'use may be continuous though not constant ... provided it occurred as often as the claimant had occasion or chose to pass. Mere intermission is not interrupted.' " *Id.* (citations omitted).

¶ 23 The trial court did not exceed its permitted range of discretion in refusing instruction number 9, for the law supports the County's position.

### C. Instruction Number 33

■ ¶ 24 Chapman next argues that the trial court erred in not giving instruction number 33. This instruction "advised the jury that they were to determine whether

---

7. Additionally, Chapman attacks the reasoning in *Heber City Corp. v. Simpson,* 942 P.2d 307 (Utah 1997), and argues that we should either overturn or ignore the case. We decline to ignore clear

precedent and note that we are not empowered to reverse rulings of the Utah Supreme Court. *See generally State v. Thurman,* 846 P.2d 1256 (Utah 1993).

the existence of gates 'interrupted' the continuity of the use of [t]he [r]oad." Chapman maintained that the presence of a gate served to interrupt the "continuity of use."

¶ 25 At trial, Chapman argued, during his closing argument, that the presence of gates across the property signified that the road was private. Uintah County objected. The court allowed Chapman to finish his closing argument and then discussed the issue with the attorneys. After much discussion, the court decided to give the following instruction to the jury:

There has been testimony concerning certain gates across the roadway at various times. Such gates may or may not interrupt public use of the roadway. Whether the gates which were placed across the roadway did in fact interrupt use by the public is an issue for the jury to decide.

Chapman's attorney not only failed to object to this instruction but actually agreed to it on the record.

¶ 26 "[I]n order to appeal the giving or the refusal of a jury instruction, a party must properly object to the instructions in the trial court and explain its grounds, with specificity, for challenging the instructions." *R.T. Nielson Co. v. Cook*, 2002 UT 11,¶ 10, 40 P.3d 1119. "If a party does not object and articulate the grounds with sufficient specificity such that the issue is presented before the trial court for consideration, that issue cannot be raised on appeal." *Id.* Chapman never renewed any objection to jury instruction number 33 after the parties agreed upon its content and thus, cannot raise this argument on appeal.

### D. Failure to Admit Exhibits 4 and 5

¶ 27 Chapman claims that the trial court improperly excluded two trial exhibits on the grounds that they were irrelevant. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R. Evid. 401. "Evidence which is not relevant is not admissible." Utah R. Evid. 402.

¶ 28 " '[W]e will find error in a relevancy ruling only if the trial court has abused its discretion. Additionally, an erroneous evidentiary ruling will lead to reversal only if, absent the error, there is a reasonable likelihood that there would have been a more favorable result....' " *Larsen v. Johnson*, 958 P.2d 953, 957 (Utah App.1998) (citations omitted).

¶ 29 Here, Chapman tendered exhibits 4 and 5 for admission. Chapman claimed that exhibits 4 and 5 were "rights-of-way agreements" with the oil companies evidencing that Chapman and his fellow landowners had given the oil companies permission to use the road to maintain a pipe that ran parallel to the road. Consequently, Chapman argues, the oil company traffic could not be used to show that the road was public. *See Campbell v. Box Elder County*, 962 P.2d 806, 809 (Utah Ct.App.1998) (noting that "permissive use cannot result in either adverse possession or dedication of private property to the public"). The court disagreed and stated:

The way I read [the right-of-way agreements] ... is that [they] give [the oil companies] a right to come upon the property in connection with their rights ... to maintain the pipe.... [When oil company employees] drive[ ] across [the property] to get to some other location[,] they're not proceeding, in my judgment, on this right-of-way.

. . . .

[I]n order to introduce [these exhibits] you've got to lay a foundation.... [I]ts your burden to show that this particular document has relevance. You can only do that, in my judgment, by showing that there were oil field companies on that property pursuant to this [right-of-way], and you haven't done that.

. . . .

[Greg Harmston testified that the pipe was laid] but he hasn't said that there was anybody that had ever come on to inspect it, and that's what you're arguing to me, is that the people were going by and inspecting as they go by....

¶ 30 We conclude that the trial court did not exceed its permitted range of discretion in excluding these two exhibits. The evidence did not support Chapman's theory that the oil company utilized the road only as a result of having been authorized by Chapman in the right-of-way agreements. The trial

court provided Chapman with an opportunity to lay a proper foundation for admitting these exhibits and Chapman was unable to do so. In light of this, Chapman's claim is without merit.

### E. Jury Verdict is Not Supported by the Evidence

¶ 31 Chapman asks this court to set aside the jury verdict because it is "not supported by clear and convincing evidence of dedication by abandonment." "To support an insufficiency of the evidence claim on appeal, 'the one challenging the verdict must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict.' " *Child v. Gonda*, 972 P.2d 425, 433 (Utah 1998) (citations omitted).

¶ 32 Here, Chapman has "failed to properly marshal all evidence supporting the jury verdict and explain how, in spite of this evidence, the jury verdict should be overturned." *Brookside Mobile Home Park v. Peebles*, 2002 UT 48, ¶ 30, 48 P.3d 968. Instead, Chapman picks and chooses the facts in favor of his position and then merely restates the arguments raised below. For this reason, we conclude that Chapman has not complied with his marshaling requirement and do not further address this argument.

### III. Attorney Fees

¶ 33 Uintah County seeks an award for attorney fees on appeal, pursuant to Utah Rules of Appellate Procedure 33, on the grounds that Chapman's appeal was frivolous. "Under rule 33, a frivolous appeal is one that 'is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law.' " *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 59, 56 P.3d 524 (quoting Utah R.App. P. 33(b)). While we have determined that each of Chapman's claims is without merit, his appeal of these claims is not frivolous. Thus, we conclude that Uintah County is not entitled to fees.

### CONCLUSION

¶ 34 For the first time on appeal, Chapman argues that Commonwealth breached its contractual duty to pay damages. Because the trial court was not given an opportunity to rule on this issue, we do not address it. We also conclude that Chapman's negligence claim against Commonwealth is without merit. Also, Chapman's claim that Commonwealth assumed the role of an abstractor in this case is without sufficient factual support.

¶ 35 We further conclude that the trial court did not exceed its permitted range of discretion when it refused to give Chapman's proposed instructions 5, 6, 7, 9, and 33. Furthermore, the trial court did not exceed its permitted range of discretion in excluding exhibits 4 and 5, since Chapman neither laid the proper foundation for their admission nor demonstrated their relevance. We decline to address Chapman's final argument that the jury verdict is not supported by the evidence because Chapman does not properly marshal the evidence. Finally, we deny Uintah County's request for attorney fees.

¶ 36 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and GREGORY K. ORME, Judge.