Filed 7/14/14  Jones v. Turnage CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RON JONES,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>WAYNE TURNAGE,<br><br>       Defendant and Respondent. | A139533<br><br>(Solano County<br>Super. Ct. No. FCS039801) |

Ron Jones appeals from a judgment dismissing his breach of contract and negligence action against Wayne Turnage.  The trial court sustained a demurrer to Jones's second amended complaint (SAC), without leave to amend, on the grounds the breach of contract action was barred by the statute of frauds (Civ. Code, § 1624)[1] and insufficient facts had been alleged to state a negligence cause of action.  We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

So far as we can discern from the convoluted allegations of Jones's operative pleading, aided by the documents he has referenced, the material facts are as follows:

Wayne and Carol Turnage[2] owned Universal Environmental, Inc. (U.E.):  an environmental cleanup company, for whom Jones worked at various times, beginning in

---

[1] All further undesignated statutory references are to the Civil Code.

[2] Wayne's ex-wife, Carol Turnage, was also named as a defendant in Jones's suit.  Because Wayne and Carol share the same last name, we refer to each by first name only.  No disrespect is intended.  Carol answered the operative complaint and is not involved in this appeal.

1

1981.  In 1984, to induce Jones to return to employment in California, Wayne volunteered to help Jones buy a home.  Wayne located a property in Fairfield, and they agreed to split the down payment, mortgage payments, and costs of repair.  Title to the property in Fairfield was to be held by Wayne alone, but Jones was to live there.  Wayne and Jones would split any profit from sale.  In 1985, Jones and Wayne entered into a similar agreement with respect to real property at 8289 Shadi Lane in Winters (the Winters Property).  They would split the mortgage and down payments, each would own 50 percent of the Winters Property, but title was to be taken only in Wayne's name.  Unbeknownst to Jones, title was actually "held jointly and equally by Carol and Wayne."

In 1990, U.E. was sold and bonuses were awarded to upper level management employees.  Wayne agreed to give Jones Wayne's 50 percent of the Winters Property in lieu of a cash bonus.  However, Jones and Wayne agreed that "title was to remain temporarily in Wayne's name so Wayne could use its value for loans if needed."  In 1997, Carol quit claimed her community property interest to Wayne.  In 2000, during dissolution proceedings, Carol reasserted her community property interest in the Winters Property.  In 2003, Jones sued Carol and Wayne to quiet title.

The parties settled Jones's quiet title action in June 2007, and "[t]he terms of the settlement between the parties included:  (i) Jones was to pay Carol $350,000 for the [Winters Property] in the form of a $75,000 down payment and a loan secured by a deed of trust.  Interest during the 1st three (3) years on the balance due of $275,000 at five percent (5%) per annum and eight percent (8%) per annum in a one year extension if needed; (ii) Wayne was to deed his 50% share of title to Jones without further consideration; (iii) Carol was to grant her 50% titled interest to Jones; (iv) Title was to be clear. [¶] . . . On 4/17/2007, Wayne grant deeded his 50% titled interest in [the Winters Property] to Jones; in April 2007 Jones took out a loan for $75,000 and paid the required down payment; on 4/17/2007 Jones signed a Straight Note to Carol for the $275,000 balance due[,] . . . Carol executed a deed of trust to Jones[,] who thereby became the fully titled owner of [the Winters Property]."

Jones attaches to his SAC, as an exhibit, a document titled "Settlement Agreement," which was filed in Solano County Superior Court on June 14, 2007. The Settlement Agreement provides in relevant part: "[Wayne] is dismissed from this case as *he has* deeded his interest in the [Winters Property] to [Jones.] [¶] . . . [¶] [*Jones*] *will purchase the interest of* [*Carol*] *in the* [*Winters Property*] *for the sum of $350,000.* Said sum shall be paid as follows: [¶] a. [Jones] will pay the sum of $75,000 within sixty (60) days by taking out a new loan in that amount. [Carol] shall submit a deed in favor of [Jones] through the escrow for that loan. [¶] b. The balance of the $275,000 shall be due and payable in three years with interest at five percent (5%) per annum until paid. [¶] . . . [¶] e. [Carol] shall execute a grant deed in favor of [Jones] and [Jones] shall execute a note and deed of trust in favor of [Carol], for the sum of $275,000 plus interest as stated above. [Carol] agrees this note and deed of trust shall be in second position to any note and deed of trust [Jones] executes to secure the initial payment of $75,000 noted above. [¶] . . . [¶] [Wayne] and [Carol] agree that this settlement removes this property from any further consideration in their dissolution of marriage proceedings." (Italics added.) The Settlement Agreement is signed by Jones, Wayne, Carol, and their respective attorneys.

In 2010, Jones attempted to take out a loan secured by the Winters Property "in order to pay off his note to Carol." However, he was unable to obtain a loan "because Winchester Mortgage Co. held an active lien on [the Winters Property] against Wayne and Carol." That same year, Wayne paid Jones $125,000, purportedly for the down-payment made by Jones on the Winters Property plus accumulated interest on the note to Carol. In late 2011, Jones was informed by Carol that foreclosure for nonpayment on the note was in process. Jones told Wayne that "Wayne needed to take care of it." Wayne refused to make any further payments. Ultimately, Carol foreclosed on the Winters Property.

Jones's SAC attempts to state breach of contract, negligent misrepresentation, and negligence causes of action.[3] In his breach of contract cause of action, Jones alleges:

---

[3] Jones has abandoned his negligent misrepresentation cause of action on appeal.

"Wayne promised to satisfy all [Jones's] monetary obligations to Carol under the Straight Note. Wayne has not done so, thereby defaulting in performance on his part of the bargain." Jones also alleges: "Writings establishing an express contract between Wayne and Carol . . . and [Jones] exist. . . . [T]he contract must be considered in light of the circumstances under which it was made, especially with respect to Wayne's originally offering full title to Jones without additional consideration from Jones following Wayne and Carol's sale of U.E. [¶] . . . [¶] Those stated circumstances include both: (i) the terms of the Settlement Agreement of June 14, 2007 . . . and (ii) that as an-lieu [*sic*] of the bonus otherwise offered to Jones by Wayne and Carol after Wayne and Carol had sold U.E. in 1990; (iii) Jones was to receive clear title to the [Winters Property] . . . . [¶] . . . The writing between Jones and both Wayne and Carol . . . establish[es] the following: (i) Jones was to make a specified down payment and sign a Straight Note to Carol for the balance; the interest rate and time period for payment for the property were specified in the note and agreed upon between the parties; (ii) Carol was to Convey her 50% titled interest in [the Winters Property] to Jones via a Deed of Trust; (iii) Wayne was to deed his 50% titled interest in [the Winters Property] without further consideration[,] within the allotted repayment period of Jones's note to Carol; (c) Performance: (i) Wayne deeded his titled interest to Jones; (ii) Jones made his down payment to Carol and executed a note to Carol for the balance due under the agreement; (iii) Carol gave title of her 50% interest in [the Winters Property] to Jones in a Deed of Trust; (iv) As a precondition that led to the written settlement agreement[,] Wayne agreed to provide Jones with funds sufficient to totally clear the note to Carol so that Jones would be made whole and none of his resources would be used to pay; (iv) Evidence of this lies in the fact that Wayne paid Jones $125,000 in partial payment of his responsibility under that precondition to the written agreement; subsequently Wayne refused to pay the balance to [Jones] when [Jones] requested Wayne to do so." (Boldface & underlining omitted.)

As the basis for his negligence cause of action, Jones alleges that, beginning in 1997 or 1998, Wayne stored hazardous wastes, which leaked or spilled, at the Winters Property. Jones further contends: "A legal duty was owed by Wayne to Jones on the

4

basis of the express contract made between the parties. [¶] . . . A major part of that duty was to avoid acts that would jeopardize the value of their commonly owned property . . . . [¶] . . . Wayne's storing hazardous waste materials on [the Winters Property] constituted a breach of the duty Wayne owed to Jones who was a co-owner of the property and member of the class of parties for whom the hazardous waste regulations of the state of CA were enacted. [¶] . . . [¶] . . . Jones *would have* faced difficulty in getting a loan because of the costs involved in decontaminating the polluted areas. [¶] . . . Eventually, after she had foreclosed against Jones, Carol had all hazardous waste contaminated areas decontaminated." (Italics added.)

Wayne filed a demurrer, contending that the Settlement Agreement contradicted Jones's contract allegations and that any oral agreement was unenforceable under the statute of frauds. With respect to the negligence cause of action, Wayne argued that Jones had failed to allege a duty or damage.

The trial court agreed that Jones's allegations were insufficient to state a cause of action and sustained the demurrer without leave to amend. The court explained: "[Jones's] first cause of action for breach of contract fails to state adequate facts supporting the cause of action. [Jones] refers to the existence of '[w]ritings establishing an express contract between [Wayne, Carol, and Jones], specifically identified as the settlement agreement dated June 14, 2007 attached as Exhibit 1 of the complaint, and claims that the contract was breached when [Wayne] failed 'to satisfy all [Jones's] monetary obligations to Carol under the Straight Note.' . . . The settlement agreement attached to the [SAC] contains no terms or duties requiring [Wayne] to pay [Jones's] debt to [Carol]. It merely acknowledges that, having already deeded his interest in the property to [Jones], [Wayne] was dismissed from [Jones's] prior action. . . . Therefore, [Jones's] breach of contract claim can only be understood as being based on some oral agreement for [Wayne] to pay [Jones's] debt to another, which is subject to the statute of frauds. [¶] [Jones's] sole allegation attempting to plead around the statute of frauds is that [Wayne] 'paid Jones $125,000 in partial payment of his responsibility under that precondition to the written agreement.' . . . The payment of money to [Jones] by [Wayne]

5

at some unspecified date after the execution of the 2007 settlement agreement does not clearly relate to the terms of the agreement and does not satisfy the evidentiary function of the statute of frauds. In addition, [Jones] fails to allege how he might have substantially changed his position in reliance on the alleged oral agreement such that he suffered some unjust and unconscionable loss. [¶] . . . [¶] . . . [Jones's] claim of the existence of some duty owed by [Wayne] to [Jones] to refrain from storing the 'hazardous waste' or from reducing the value of the property relies entirely on [Jones's] unenforceable oral agreements for the conveyance of the property to [Jones.] . . . In any case, [Jones] fails to allege that there was any agreement between the parties prohibiting [Wayne] from storing the alleged 'hazardous waste' on the real property or that [Wayne] owed some other statutory or common law duty to [Wayne] to refrain from storing the 'hazardous waste' on the property." A judgment of dismissal was entered. Jones filed a timely notice of appeal.

## II.    DISCUSSION

On appeal, Jones argues that his SAC is sufficient to state causes of action for both breach of contract and negligence. He also maintains that the trial court abused its discretion by denying leave to amend. His arguments are without merit.

A.    *Standard of Review*

"On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.] First, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. Next, we treat the demurrer as admitting all material facts properly pleaded. Then we determine whether the complaint states facts sufficient to constitute a cause of action. [Citations.] [¶] We do not, however, assume the truth of contentions, deductions, or conclusions of law. [Citation.]" (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439–440.) We are "not bound by the trial court's construction of the complaint . . . ." (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 958.)

6

Rather, we independently evaluate the complaint, construing it liberally. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"[T]he plaintiff bears the burden of demonstrating that the trial court erred. [Citation.] . . . [¶] To establish that he adequately pleaded even one of his causes of action, [the plaintiff] must show that he pleaded facts sufficient to establish every element of that cause of action. [Citation.] Thus, if the defendants negate any essential element of a particular cause of action, this court should sustain the demurrer to that cause of action. [Citation.] As a consequence, [the plaintiff] bears the burden of overcoming all of the legal grounds on which the trial court sustained the demurrers . . . ." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879–880, italics & fns. omitted.) "[W]e are not limited to the grounds specified by the trial court for sustaining the demurrer. [Citation.] . . . '[It] is the validity of the court's *action*, and not the *reason* for its action, which is reviewable.' [Citation.]" (*Beresford Neighborhood Assn. v. City of San Mateo* (1989) 207 Cal.App.3d 1180, 1190.) "If another proper ground for sustaining the demurrer exists, this court will still affirm the demurrer[] even if the trial court relied on an improper ground, whether or not the defendants asserted the proper ground in the trial court. [Citation.]" (*Cantu,* at p. 880, fn. 10.)

On appeal from a demurrer we search the facts to see if they make out a claim for relief under *any* theory, regardless of whether the theory was raised before the trial court. (*Smith v. Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 629–630.) "This consideration of facts includes those evidentiary facts found in recitals of exhibits attached to a complaint. [Citation.]" (*Satten v. Webb* (2002) 99 Cal.App.4th 365, 375.) "If the allegations in the complaint conflict with the exhibits, we rely on and accept as true the contents of the exhibits. However, in doing so, if the exhibits are ambiguous and can be construed in the manner suggested by plaintiff, then we must accept the construction offered by plaintiff. [Citations.]" (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83.)

B.    *Breach of Contract*

In his breach of contract cause of action, Jones alleges that Wayne breached the Settlement Agreement by refusing to "provide Jones with funds sufficient to totally clear the note to Carol."

Jones contends that the trial court erred in concluding that the contract was unenforceable under the statute of frauds. Specifically, he argues: "The [trial] court misapplied the Statute of Frauds, first finding application and secondly in not finding an exception." The statute of frauds provides, in relevant part: "The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] (1) An agreement that by its terms is not to be performed within a year from the making thereof. [¶] (2) A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in Section 2794. [¶] (3) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein . . . ." (§ 1624, subd. (a).)

The trial court focused its attention on section 1624, subdivision (a)(2). "A special promise to answer for the debt, default, or miscarriage of another" is invalid unless it is in writing and subscribed by the party to be charged. (§ 1624, subd. (a)(2).) Jones takes issue with the court's characterization of his claim "as being based on some oral agreement for [Wayne] to pay [Jones's] debt to another." Jones maintains: "Wayne was not paying Jones' debt to Carol. Wayne's payments were to be made to Jones and Jones alone."

It is true that "there is not a contract to answer for the debt of another within the statute of frauds where the alleged guarantor promises the *debtor*, rather than the creditor to pay the former's debt." (*King v. Smith* (1948) 33 Cal.2d 71, 74.) And, although Jones's SAC is somewhat confusing and ambiguous, Jones alleges that "Wayne agreed *to provide Jones* with funds sufficient to totally clear the note to Carol so that Jones would be made whole and none of his resources would be used . . . ." (Italics added.) However, we are not bound by the trial court's reasoning.

8

The statute of frauds also applies to "[a]n agreement for the . . . sale of real property, or of an interest therein." (§ 1624, subd. (a)(3).) With respect to section 1624, subdivision (a)(3), Jones only submits, "One can argue that once Wayne deeded his interest in the Winters property to Jones, the agreement no longer involved real estate." This argument is flatly contradicted by the Settlement Agreement itself. Although the Settlement Agreement used the past tense to indicate that Wayne had already "deeded his interest in the [Winters Property] to [Jones]," it also provided that Jones would "purchase the interest of [Carol], in the [Winters Property] for the sum of $350,000." Clearly, the Settlement Agreement was "[a]n agreement for the . . . sale of real property, or of an interest therein." (§ 1624, subd. (a)(3).)

In order to satisfy the statute of frauds, a writing must state, with reasonable certainty, (1) each party to the contract; (2) the subject matter of the contract; and (3) the terms and conditions of *all* the promises constituting the contract. (*Rivers v. Beadle* (1960) 183 Cal.App.2d 691, 696.) Jones alleges that Wayne breached the written Settlement Agreement. But, the Settlement Agreement contained no reference to Wayne's purported promise to pay the $350,000 Jones was to pay to Carol. The promise is therefore unenforceable under the statute of frauds. (See *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 345 ["[t]he statute of frauds 'demands that every material term of an agreement within its provisions be reduced to written form, whether the parties desire to do so or not' "]; *Lombardo v. Santa Monica Young Men's Christian Assn.* (1985) 169 Cal.App.3d 529, 539 ["[w]here a writing discloses no promise or agreement and cannot be made clear as to its significance without resort to parol evidence, it is inadequate to satisfy the statute of frauds"]; *Rivers,* at p. 695 ["[t]he statute of frauds . . . requires that the writing evidence the contract exclusively"].) Jones has not met his burden to show that the statute of frauds is inapplicable.[4]

---

[4] We need not reach Wayne's contention that the Settlement Agreement is also unenforceable because it is a contract "not to be performed within a year." (§ 1624, subd. (a)(1).)

Instead, Jones contends that "Wayne's execution of a deed and payment of [$125,000] was sufficient partial performance on . . . Wayne's part, to be an exception to the Statute of Frauds." "[The statute of fraud's] requirement of a basic writing is subject to an implied exception for 'part performance' of the contract's terms." (*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1100.) "[T]o constitute part performance, the relevant acts either must 'unequivocally refer[]' to the contract [citation], or 'clearly relate' to its terms. [Citations.] Such conduct satisfies the evidentiary function of the statute of frauds by confirming that a bargain was in fact reached. [Citation.]" (*Id.* at p. 1109.) Jones's argument fails because the mere payment of money is not sufficient part performance to take an oral agreement out of the statute of frauds.[5] (*Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 555; *Anderson v. Stansbury* (1952) 38 Cal.2d 707, 715–716; *Francis v. Colendich* (1961) 193 Cal.App.2d 128, 131; *Maddox v. Rainoldi* (1958) 163 Cal.App.2d 384, 389.)

Next, Jones contends that his reliance—in the form of dismissing his quiet title action—estopped application of the statute of frauds because otherwise "unconscionable injury would result." "The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract [citations], or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. [Citations.] In many cases both elements are present. Thus not only may one party have so seriously changed his position in reliance upon, or in performance of, the contract that he would suffer an unconscionable injury if it were not enforced, but the other may have

_____

[5] The cases relied on by Jones are not inconsistent with this rule. (*Nesson v. Moes* (1963) 215 Cal.App.2d 655 [plaintiff performed by providing services to defendant in medical practice]; *Dean v. Davis* (1946) 73 Cal.App.2d 166 [plaintiff performed by securing employment for defendant].)

10

reaped the benefits of the contract so that he would be unjustly enriched if he could escape its obligations." (*Monarco v. Lo Greco* (1950) 35 Cal.2d 621, 623–624.)

"First, equitable estoppel may apply where the promisor had induced the promisee to make a serious change of position in reliance on the oral agreement, commonly known as 'detrimental reliance,' and a failure to enforce the oral agreement would have caused an unconscionable injury to the promisee. Alternatively, equitable estoppel may apply where the promisor would be unjustly enriched by receiving the benefit of the promisee's performance if the promisor were allowed to invoke the statute of frauds." (*Estate of Housley* (1997) 56 Cal.App.4th 342, 351.) "Before a party can be estopped to assert the statute due to the other's part performance, it must appear that a sufficient change of position has occurred so that the application of the statutory bar would result in an unjust and unconscionable loss, amounting in effect to a fraud. [Citations.]" (*Anderson v. Stansbury, supra,* 38 Cal. 2d at p. 715.) Estoppel to assert the statute of frauds will not arise unless the unconscionable injury or unjust enrichment goes beyond mere monetary loss or loss of the benefit of the contractual bargain. (*Estate of Baglione* (1966) 65 Cal.2d 192, 197–198.) "Whether or not the elements of estoppel exist depends on the particular factual context. [Citation.]" (*Ward v. Wrixon* (1959) 168 Cal.App.2d 642, 655.)

Jones maintains, in his opening brief, that he dismissed his quiet title action and promised to pay Carol $350,000 in reliance on Wayne's oral promise.[6] However, his allegations in the SAC are not so clear. In fact, Jones alleges that in 2010 he "attempted to take out a loan on the property in order to pay off his note to Carol." It was not until 2011 that Wayne refused to "take care of" payments on the note to Carol. Jones does not

---

[6] Jones also refers to improvements he made to the Winters Property. However, Jones did not allege in his SAC that he made improvements in reliance on Wayne's promise to pay him $350,000. The record suggests that the improvements were made between 1986 and 1990 and, therefore, could not have been made in reliance on Wayne's 2007 promise.

explain why he attempted to obtain a loan from a third party, if he had relied on Wayne's promise to provide the funds.

Jones's reliance on *Monarco v. Lo Greco, supra,* 35 Cal.2d 621 is misplaced. In *Monarco*, estoppel was shown when decades of labor on a family farm was performed without wages in reliance on an oral agreement to leave property by will. (*Id.* at pp. 623–627.) Here, unlike in *Monarco,* Jones has merely alleged that he lost the benefit of the bargain from the unenforceable contract. Jones has not alleged unconscionable injury or unjust enrichment. The trial court did not err in concluding that Jones had failed to allege facts sufficient to state a breach of contract cause of action.

C. *Negligence*

The " 'well-known elements of any negligence cause of action [are] duty, breach of duty, proximate cause, and damages.' [Citation.]" (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1106, fn. omitted.) In his SAC, Jones alleges that Wayne's storage of hazardous waste on the Winters Property fell below the standard of care expected of a co-owner of real property. However, Jones also alleges that, after Carol foreclosed, she paid for decontamination. Jones attempts to plead damages by asserting he "*would have* faced difficulty in getting a loan because of the costs involved in decontaminating the polluted areas." (Italics added.) Jones essentially concedes that he has suffered no actual damage as a result of the hazardous waste storage. The trial court did not err in concluding that Jones had failed to allege facts sufficient to state a negligence cause of action.

D. *Leave to Amend*

"[I]t is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) "The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) Jones argues that he should have been granted leave to amend because "deficiencies [in his damages allegations] are curable," "[a] third amended complaint could emphasize the

12

independence of the obligations to [Wayne and Carol]," and because he could "clarify the dismissal of the Quiet Title action and the additional reliance."  Beyond these conclusory assertions, Jones does not explain how the trial court abused its discretion in denying leave to amend.  In his opposition to the demurrer below, Jones stated that "[a] draft Amendment . . . of the [SAC] is provided for the court's review . . . ."  However, no proposed amendment was attached.  Jones has failed to meet his burden to show that it is reasonably possible he could amend his complaint to state a viable cause of action.

### III.    DISPOSITION

The judgment is affirmed.  Wayne is entitled to his costs on appeal.


_____
Bruiniers, J.


We concur:


_____
Simons, Acting P. J.


_____
Needham, J.


13