Filed 6/20/24  Tash v. Devoir Oblige Capital Group CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RAYMOND M. TASH et al., | B327414 |
| Plaintiffs and Appellants, | Los Angeles County Super. Ct. No. 20STCV48390 |
| v. | |
| DEVOIR OBLIGE CAPITAL GROUP, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert B. Broadbelt, Judge.  Affirmed.

Neufeld Marks and Paul S. Marks for Plaintiffs and Appellants.

Wright, Finlay & Zak, Jonathan D. Fink and Cathy K. Robinson for Defendants and Respondents.

Plaintiffs Raymond and Katrin Tash appeal a judgment of dismissal following an order sustaining the demurrer of defendants Devoir Oblige Capital Group, LLC aka D.O. Capital Group, LLC (Devoir Oblige); FCI Lender Services, Inc. (FCI); SG Capital Partners, LLC (SG Capital); and Select Portfolio Servicing, Inc. (SPS) (collectively, respondents). Respondents became the successor mortgagees and loan servicers after plaintiffs defaulted on their home mortgage. Although plaintiffs admit executing and submitting a loan application that contained false information, they allege a loan officer for their original lender was responsible for including the falsehoods in the application. Thus, plaintiffs contend respondents violated the Rosenthal Fair Debt Collection Practices Act (the Rosenthal Act or the Act, Civ. Code, § 1788 et seq.) by recording a notice of default that stated plaintiffs' loan application contained materially false information.[1] The trial court sustained respondents' demurrer, concluding respondents could not be held liable for the loan officer's alleged misconduct because plaintiffs had specifically alleged the loan officer was an employee of the original lender in his dealings with plaintiffs. We affirm.

## BACKGROUND

Consistent with the applicable standard of review, we draw our statement of facts from the allegations of plaintiffs' operative second amended complaint and other matters properly subject to judicial notice. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885; *Hanouchian v. Steele* (2020) 51 Cal.App.5th 99, 103

---

[1] Statutory references are to the Civil Code, unless otherwise designated.

2

(*Hanouchian*).) " '[W]e treat as true all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Hanouchian*, at p. 103.)

Between late 2018 and early 2019, plaintiffs applied for a loan from BM Real Estate Services, Inc. dba Priority Financial Network (BM Real Estate) to purchase a home in Los Angeles. They worked directly with a loan officer and employee of BM Real Estate named Tzvi Ratner-Stauber.

Before preparing the loan documents, Ratner-Stauber met with Raymond Tash to discuss plaintiffs' application.[2] During the meeting, Tash disclosed that, in 2014, he lost a townhome in Oregon to foreclosure and, two weeks later, he filed for personal bankruptcy.

Sometime after the meeting, Ratner-Stauber presented Tash with a partially filled out loan application that he asked Tash to complete. Contrary to Tash's disclosures, Ratner-Stauber had prepared the application to state there had been no bankruptcies or foreclosures within the past seven years. The application also stated that no part of the down payment was borrowed, even though Ratner-Stauber had himself facilitated a separate loan to finance part of the down payment. After receiving the application, Tash again discussed the bankruptcy with Ratner-Stauber and supplied additional information about the bankruptcy. Tash signed a later version of the application that disclosed the bankruptcy, but the application still falsely stated the down payment was

---

[2]     Because the relevant allegations concern only Raymond Tash, we refer to him singly by his last name.

3

not financed and plaintiffs had not had a property foreclosed upon within the past seven years.

BM Real Estate funded the loan sometime in 2019. First American Title Insurance Company (First American Title) was the trustee under the deed of trust.

In late 2019, plaintiffs missed a few mortgage payments. The amount of the default exceeded $200,000. On two unspecified dates, plaintiffs tendered funds to SPS, the then-current loan servicer, to reinstate the loan. On both occasions, SPS returned the funds and advised plaintiffs that the loan had been accelerated due to a false statement in plaintiffs' loan application. Thus, only a full repayment of the loan (in excess of $2 million) would be accepted.[3]

In June 2020, SG Capital acquired the loan from BM Real Estate. Sometime after that, Devoir Oblige acquired the loan from SG Capital. FCI acted as loan servicer for Devoir Oblige.

In August 2020, First American Title recorded a notice of default and notice of sale on the property. Before the sale could take place, Tash filed a petition for bankruptcy. In the bankruptcy, he managed to obtain an alternative home loan

---

[3] The deed of trust securing plaintiffs' loan provides that "Borrower shall be in default if, during the Loan Application process, Borrower or any persons . . . with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan." The deed of trust authorizes the lender to accelerate the debt based on "Borrower's breach of any covenant or agreement in this Security Instrument."

4

(albeit at a significantly higher interest rate) and paid off the original mortgage.

Plaintiffs sued respondents, as well as BM Real Estate, Ratner-Stauber, and First American Title. As relevant to this appeal, the operative second amended complaint asserts a cause of action for violation of the Rosenthal Act against respondents and the other defendants.[4] In support of the claim, the complaint alleges the defendants' foreclosure notices "falsely stated that there were material misrepresentations in [plaintiffs'] loan application, and/or that any alleged incorrect statements were materially false, and/or that the original lender reasonably relied on any such statements in funding the mortgage loan."

Respondents challenged the pleading by demurrer on the ground that it failed to allege sufficient facts to state a claim for violation of the Rosenthal Act. Among other things, they argued the complaint admitted Tash executed and submitted a loan application with several material misrepresentations; none of respondents' alleged conduct constituted a violation of the Rosenthal Act; and, at most, Ratner-Stauber allegedly engaged in inappropriate debt collection activity, but he was not respondents' agent.

The trial court sustained respondents' demurrer without leave to amend and entered a judgment of dismissal.[5] Plaintiffs filed a timely notice of appeal.

---

[4] The operative pleading also asserted a cause of action for declaratory relief against respondents and the other defendants. Plaintiffs do not challenge the dismissal of this claim.

[5] The trial court overruled in part a separate demurrer filed by BM Real Estate and Ratner-Stauber, allowing plaintiffs' Rosenthal Act claim to go forward against those defendants.

## DISCUSSION

The Rosenthal Act aims "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."[6] (§ 1788.1, subd. (b).) Among other things, the Act "generally requires 'debt collector[s] collecting or attempting to collect a consumer debt' to comply with the provisions of its federal counterpart, the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.)." (*Hagey v. Solar Service Experts, LLC* (2023) 94 Cal.App.5th 1303, 1308, quoting § 1788.17; accord *Best v. Ocwen Loan Servicing, LLC* (2021) 64 Cal.App.5th 568, 576 [the Act "incorporates the FDCPA, so that a violation of the FDCPA is per se a violation of the Rosenthal Act"].)[7] Any debt collector who violates the Act is liable for "any actual damages sustained by the debtor as a result of the violation." (§ 1788.30, subd. (a).)

Plaintiffs contend respondents' alleged conduct violated provisions of the FDCPA prohibiting a debt collector from using "any false, deceptive, or misleading representation or means in

---

[6] The Act defines " 'consumer debt' " as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." (§ 1788.2, subd. (f).) The term "includes a mortgage debt." (*Ibid.*)

[7] Section 1788.17 provides: "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."

connection with the collection of any debt."[8]  (15 U.S.C. § 1692e; see § 1788.17 [incorporating 15 U.S.C. § 1692e into Rosenthal Act].)  They point specifically to the allegation that the notice of default "falsely stated that there were material misrepresentations in [plaintiffs'] loan application, and/or that any alleged incorrect statements were materially false, and/or that the original lender reasonably relied on any such statements in funding the mortgage loan."  Materiality, in plaintiffs' telling, is the crucial issue.  They acknowledge the complaint admits the loan application contained false information about a past foreclosure and the use of borrowed funds to finance their down payment.  But plaintiffs argue these falsehoods could not have been *material* to respondents because Tash disclosed the true information to Ratner-Stauber, who, plaintiffs contend, "was and is alleged to be an agent of defendants."[9]

---

[8]      Respondents argue plaintiffs forfeited this issue by failing to raise it below.  The argument misunderstands the applicable standard of review.

   We apply the de novo standard of review to a judgment of dismissal after an order sustaining a demurrer, exercising our independent judgment about whether the complaint states a cause of action as a matter of law.  (*Hanouchian, supra,* 51 Cal.App.5th at p. 106.)  When the trial court denies leave to amend, we must also decide whether there is a reasonable possibility that the defect can be cured by amendment.  (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487.)  The plaintiff bears the burden of demonstrating a remedial amendment is possible, and this "showing can be made *for the first time on appeal*."  (*Hanouchian,* at p. 106, italics added, citing *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.)

[9]      Plaintiffs also appear to contend that respondent SPS (the original loan servicer) improperly "overreached by refusing

7

The trial court rejected plaintiffs' attempt to impute Ratner-Stauber's alleged knowledge and misconduct to respondents, reasoning plaintiffs had "not sufficiently alleged that he, *as an employee or agent for defendant BM Real Estate* [citation], was acting on behalf of [respondents]." (Italics added.) Plaintiffs contend the court erred. Because an agency allegation is " 'a statement of ultimate fact,' " plaintiffs argue it was sufficient to allege that " 'all defendants acted as agents of every other defendant in the scope of said agency.' " (See *Skopp v. Weaver* (1976) 16 Cal.3d 432, 439 (*Skopp*).) Had plaintiffs alleged only this ultimate fact, we would be compelled to agree. However, as the trial court recognized, the operative pleading alleges specific facts that negate plaintiffs' claim that Ratner-Stauber was respondents' agent.

"It is well established that in the context of a demurrer, specific allegations control over more general ones." (*Chen v. PayPal, Inc.* (2021) 61 Cal.App.5th 559, 571, citing *Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 619 (*ProjectCBD.com*); *Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1235–1236.) As the *Perez* court explained, "[w]here a pleading includes a general allegation, such as an allegation of an ultimate fact, as well as specific allegations that add details or explanatory facts, it is possible that a conflict or inconsistency will exist between the general allegation and

___

to accept" their loan reinstatement payments in lieu of foreclosure. Plaintiffs do not develop the argument and make no effort to explain how this conduct violated the Rosenthal Act. "We are not required to examine undeveloped claims." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) We deem the contention forfeited. (*Ibid.*)

8

the specific allegations.  To handle these contradictions, California courts have adopted the principle that specific allegations in a complaint control over an inconsistent general allegation.  [Citations.]  Under this principle, it is possible that specific allegations will render a complaint defective when the general allegations, standing alone, might have been sufficient." (*Perez,* at pp. 1235–1236; see, e.g., *Chen,* at p. 572 [general allegation that defendant acted in bad faith in placing holds on plaintiffs' accounts negated by specific allegation that defendant placed holds due to decrease in plaintiffs' " 'seller rating[s]' " by third-party marketplace provider]; *Willis v. Page* (1937) 19 Cal.App.2d 508, 512 ["The general allegation that plaintiff had performed all of the conditions of the agreement on his part, while specifically authorized by the code, is none the less the statement of a conclusion and as such it is controlled by the specific allegations which are in conflict therewith."].)

Plaintiffs alleged that, "[a]t the time of the events at issue here, Ratner-Stauber was an employee or loan officer (or other agent), *acting on behalf of the original lender, BM Real Estate*, in his dealings with Dr. Tash."  (Italics added.)  This specific factual allegation contradicts plaintiffs' general averment that "all defendants acted as agents of every other defendant in the scope of said agency."  Plaintiffs do not (and presumably cannot) offer any way to reconcile this critical inconsistency.  The specific allegation therefore controls and negates plaintiffs' claim that Ratner-Stauber acted as respondents' (as opposed to the original lender's) agent when he dealt with Tash in preparing plaintiffs' loan application.  (See *ProjectCBD.com, supra,* 6 Cal.App.5th at p. 619 [specific allegation that Project CBD defendants published article on their own website and "other websites

9

(but not Facebook)" controlled over "the inconsistent, more general allegation that all of the defendants published negative statements on Facebook"]; cf. *Skopp, supra,* 16 Cal.3d at pp. 437–438 [absence of specific allegation about formation of agency did not negate general allegation that defendants acted " '*as agents for the plaintiffs*' "]; *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 884–885 [argument challenging "*substantive soundness*" of cross-claimant's agency theory did not negate general allegation that agency existed]; *Garton v. Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 376 [allegations "tend[ing] to show" individual was employed by real estate brokerage did not preclude possibility that she acted as agent for title company in relevant transaction].)

Because Ratner-Stauber's alleged conduct cannot be imputed to respondents, there is no reasonable possibility that plaintiffs can state a claim for violation of the FDCPA or the Rosenthal Act based on respondents' role in directing the trustee to record a notice of default on plaintiffs' property. Although plaintiffs urge us to focus on whether their admitted misrepresentations were material, respondents correctly assert the statutory privilege protecting parties engaged in nonjudicial foreclosure proceedings is the dispositive issue.

Under section 2924, subdivision (d), a notice of default or a notice of sale recorded as part of a nonjudicial foreclosure proceeding constitutes a " 'privileged communication[ ] pursuant to Section 47.' " (See *Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1336 (*Schep*).)[10] While reviewing courts

---

[10]    Our Legislature's purpose in enacting section 2924 was " 'to give trustees some measure of protection from tort liability arising out of the performance of their statutory duties' " under

10

are divided over whether the absolute or qualified privilege applies under the statute (see *id.* at p. 1337), the distinction makes no difference in this case. Even under section 47's narrower qualified privilege, plaintiffs cannot state a claim based on respondents' alleged conduct. (See *Schep*, at p. 1337.)

The qualified privilege under section 47 applies " 'to communications made without malice.' " (*Schep, supra,* 12 Cal.App.5th at p. 1337, citing § 47, subd. (c); *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360.) " '[W]here the complaint shows that the communication or publication is one within the classes qualifiedly privileged, it is necessary for the plaintiff to . . . plead and prove that the privilege is not available as a defense in the particular case, e.g., because of malice.' " (*Smith v. Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 630–631.) "For the purposes of section 47's qualified privilege, 'malice' means that the defendant (1) ' "was motivated by hatred or ill will towards the plaintiff," ' or (2) ' "lacked reasonable grounds for [its] belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." ' " (*Schep,* at p. 1337, quoting *Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413; see § 48a, subd. (d)(4) [defining " '[a]ctual malice' " as "hatred or ill will toward the plaintiff"].

---

the nonjudicial foreclosure statutes. (*Schep, supra,* 12 Cal.App.5th at p. 1336.) As the *Schep* court explained, this purpose "is fulfilled only if *all* of the procedural steps attendant to a nonjudicial foreclosure are privileged" and "only if the privilege applies with equal force to both the trustee who actually records the [notice of default] as well as the principal who directs that recording." (*Id.* at pp. 1336–1337.)

Although plaintiffs base their Rosenthal Act claim on statements appearing in a notice of default and notice of sale, they entirely ignore the privilege in their appellate briefing, and they do not discuss how they could reasonably amend their complaint to allege respondents acted with malice in directing the trustee to record the notices. Nevertheless, based on what plaintiffs have specifically alleged, we can conclusively say it is not reasonably possible to amend the pleading to overcome the privilege.

Plaintiffs' operative complaint alleges Ratner-Stauber, acting "on behalf of the original lender," prepared a loan application for plaintiffs with false information about a past foreclosure and the use of borrowed funds to finance plaintiffs' down payment. Notwithstanding Ratner-Stauber's alleged misconduct, the pleading also *admits* that plaintiffs executed and submitted the loan application despite knowing it contained these misrepresentations. Within a year of obtaining the loan, plaintiffs defaulted on payments exceeding $200,000. Respondents acquired the loan from the original lender after plaintiffs' default and, consistent with the terms of the mortgage, accelerated the debt, and directed the trustee to record a notice of default and notice of sale on the property. The notices disclosed plaintiffs' admitted misrepresentations. None of these allegations could be reasonably amended to support a claim that respondents made a false representation in the foreclosure notices with hatred or ill will toward plaintiffs or a reckless disregard for the truth. The trial court properly sustained respondents' demurrer to the Rosenthal Act claim without leave to amend. (See *Schep, supra,* 12 Cal.App.5th at pp. 1337–1338 [demurrer properly sustained based on section 47 qualified

12

immunity where allegations suggested reasonable basis for successor trustees' belief in legitimacy of nonjudicial foreclosure proceedings, notwithstanding recording of "wild deed" giving trustees constructive notice of competing claim to title].)

## DISPOSITION

The judgment is affirmed. Respondents Devoir Oblige Capital Group, LLC aka D.O. Capital Group, LLC; FCI Lender Services, Inc.; SG Capital Partners, LLC; and Select Portfolio Servicing, Inc. are entitled to costs.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



LAVIN, Acting P. J.



ADAMS, J.

13